George P. SHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The NALLE CLINIC, Defendant.

Civ. A. No. 2322.

United States District Court
W. D. North Carolina,
Charlotte Division.

Dec. 31, 1969.

L. H. Silberman, Solicitor of Labor, Beverley R. Worrell, Regional Solicitor, and Carl W. Gerig, Jr., Atty., U. S. Dept. of Labor, Atlanta, Ga., for George P. Shultz, plaintiff.

Gaston H. Gage, Grier, Parker, Poe & Thompson, Charlotte, N. C., for The Nalle Clinic, defendant.

## MEMORANDUM OPINION AND JUDGMENT

McMILLAN, District Judge.

The Secretary of Labor seeks to enjoin The Nalle Clinic, an incorporated medical clinic, from alleged violations of the minimum hourly wage and overtime pay provisions of the Fair Labor Standards Act (29 U.S.C.A. § 201 et seq.). The time of the alleged violations begins on February 13, 1966, which is the effective date of certain broadening amendments to the Fair Labor Standards Act. The defendant in the period beginning February 13, 1966 is admittedly subject to the Act. However, if the defendant was subject to the Act *before* February 13, 1966, its current liabilities since February 13, 1966 are greater than they would be if its liability first began on February 13, 1966.

It therefore becomes necessary to determine whether, *under the law as it existed before February 13, 1966,* the defendant was subject to the Act's requirements.

The first question is whether under the pre-1966 law the defendant was an "enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C.A. § 203(s) (1), (3), which read as follows:

"(s) 'Enterprise engaged in commerce or in the production of goods

for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

"(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more;

\* \* \* \* \* \*

"(3) any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000;".

A second question is whether the defendant during the relevant period was a "retail or service establishment" exempt under Section 213(a) (2) which in pertinent part read as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

\* \* \* \* \* \*

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—

"(i) is not in an enterprise described in section 203(s) of this title."

The court has jurisdiction of the parties and under 29 U.S.C. § 217 and 28 U.S.C. § 1337 and § 1345 it has jurisdiction of the cause of action.

Based upon testimony, pleadings, admissions and other evidence offered at the trial of this case without a jury, the court finds the facts to be as follows:

1. The defendant, The Nalle Clinic, is a private incorporated medical clinic in the City of Charlotte, Mecklenburg County, North Carolina, composed of a medical staff, variously including 19 to 27 physicians and surgeons, working as specialists in cooperative association, duly licensed under the laws of the State of North Carolina primarily for the group practice of medicine by furnishing medical and surgical services for the individual personal needs of citizens, mostly residents, but including some non-residents of North Carolina.

2. The manager of The Nalle Clinic, Ralph Drake, a layman, is generally responsible for the administrative supervision of the Clinic. The defendant employs nurses, secretaries, clerks, receptionists, laboratory technicians, physical therapists and other personnel including janitors and maids. The employment of the janitors and maids is the subject matter of the complaint filed by the Secretary of Labor. The period involved is the period since February 13, 1966. Plaintiff makes no claims based on alleged violations prior to that date, because of the two-year statute of limitations.

3. Since February 13, 1966, the defendant has each year received annual income from fees for professional medical services in excess of $1,000,000 and as high as $1,800,000. The physicians and surgeons share in the income on a stipulated percentage basis. More than 98% of the income is derived from patients who are residents of Mecklenburg County or the City of Charlotte; 36% to 40% of this income is derived from medical and surgical services rendered to patients in hospitals by the physicians and surgeons or the professional staff.

4. None of the professional services and drugs provided to patients by physicians and surgeons of the defendant are intended for subsequent resale by the patients.

5. The medical staff is organized to provide private specialized medical services, consultation, diagnosis and treatment, through the joint use of equipment and auxiliary personnel.

6. Each member of the medical staff is engaged in the practice of a medical specialty. The general practice is not emphasized and ordinarily occurs only as an incident to practice of a medical specialty.

7. The medical records of patients of the medical staff are maintained and processed by employees of defendant on behalf of the medical staff, and include billings, processing of insurance claims, and medical data. Such medical records are confidential and are considered by the defendant to be protected by the physician-patient privilege against disclosure.

8. At all times pertinent hereto defendant had, at the clinic in Charlotte, a number of employees regularly engaged in ordering, receiving, storing and handling x-ray films, developers, medications, cleaning compounds and other goods which defendant purchases and receives in commerce from points outside the State of North Carolina.

9. The total annual dollar volume of goods during the pertinent period which the defendant bought or received for resale, which goods moved or had moved across State lines (not in deliveries from the reselling establishment) never exceeded $80,000. This dollar volume apparently varied between 8% and 5% of the total dollar volume of the clinic and was nowhere near 50% of the total dollar volume of the clinic.

10. Defendant's exemption from the Act, if it has one, does not come from Section 13(a) (2) (iii), which exempts certain hospitals and other institutions for the care of the sick. The Nalle Clinic is not a hospital within that proviso.

11. Defendant buys most of its medical supplies and pharmaceuticals from McKesson & Robbins, a Charlotte wholesaler. Most of these items are produced outside North Carolina. Medicines, drugs, vaccines, bandages and other items thus purchased are administered to or used in treatment of patients at the clinic.

12. Some patients come to defendant from other States and occasionally drugs, vaccines and blood samples have been mailed across State lines. These activities have occurred as required in the course of providing professional medical services to individual patients.

13. The defendant's administrator, Mr. Drake, expressed the opinion that the defendant is a "retail or service establishment."

14. The defendant does not collect nor remit retail sales taxes.

15. Defendant employed several women as insurance secretaries or clerks. These women regularly sent claims for insurance benefits on behalf of patients to insurance companies, many of which were outside North Carolina, based on data from the patients and from clinic records.

16. Between 90% and 95% of the patients are individuals who attend the clinic as private patients, without any industrial or employment connection. More than 90% of the gross income of the clinic is from medical services rendered by the doctors and staff to private patients. Perhaps one-third of the medical services are rendered to patients in hospitals but are billed from the clinic. There is a department of industrial medicine dealing with industrial health and accident problems, such as workmen's compensation. Income from persons of such industrial connection is less than 3% of the defendant's gross annual income.

17. There is no resale by the patients of the medical services, or of the sup-

plies and drugs dispensed or furnished to the patients.

18. Most of the doctors belong to the Mecklenburg County Medical Society, which belongs to the Charlotte Merchants Association. The credit and collection department of the Charlotte Merchants Association operates an aggressive collection service to procure payment of medical bills.

19. The Mecklenburg County Medical Society is affiliated with the North Carolina Medical Society, which is a part of a confederation known as the American Medical Association. Most of the doctors connected with the clinic belong to these societies and associations.

20. The doctors in the defendant clinic are professional men, and their services are professional services; but in operating a clinic, especially one of this size, there are scores of business operations which have to be performed by accountants, secretaries, nurses, janitors, custodians, shipping and receiving clerks, receptionists, collection departments and other people.

21. The plaintiff's own Interpretative Bulletin (Title 29, Part 779 of the Code of Federal Regulations), Section 779.386, recognizes medical services rendered in hospitals and in clinics and dispensaries operating in hospitals as not lacking in "retail concept." One-third or more of the defendant's income is derived from services rendered to patients in hospitals.

22. The same bulletin lists a set of establishments whose sales or services may be recognized as retail, Title 29, CFR, Part 779, page 50, § 779.320. This list includes barber shops (the barber or chirurgeon is a forerunner of the modern surgeon), crematories, dance halls, embalming establishments, funeral homes, masseurs, public baths, reducing establishments, scalp-treatment establishments and undertakers. These have a rough similarity to the physical service elements of medical practice, though on a very different level of skill and professionalism.

23. On page 48 of the same bulletin there is a list of establishments considered *not* to be retail. Doctors are missing from this list, although lawyers are listed.

24. Practicing medicine or surgery is the rendering of a service, and each service in a non-transferable retail, not a wholesale, transaction.

■ Upon these facts, it is the court's opinion that the defendant was not within the "enterprise" coverage of 29 U.S.C.A. § 203(s), because its interstate purchases and sales were less than $80,000 a year and therefore it did not purchase or receive "goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more."

■ Upon these facts, it is the court's further opinion that The Nalle Clinic is a "retail or service establishment" under the exception set out in 29 U.S.C.A. § 213(a) (2), and was therefore exempt during the pre-1966 period from the requirements of the Act. Wirtz v. Modern Trashmoval, 323 F.2d 451 (4th Cir., 1963), cert. den. 377 U.S. 925, 84 S.Ct. 1222, 12 L.Ed.2d 216 (1964).

It is argued that the "retail" concept is inconsistent with the "professionalism" of medicine. That may be true, but the same could also be said (with no apologies for any employer, covered or otherwise, who pays less than the statutory minimum wages) for the entire concept of wage and hour regulation of professional people. If the "professional" nature of The Nalle Clinic's services does not keep it from being an "enterprise" under § 203(s), this professionalism should not keep this *service* "enterprise" from being *"retail"* in nature. Moreover, since it is primarily the retail processing of purchases and sales across State lines which brings the case before the court, that retail activity should not be ignored in appraising the overall character of the operation.

It is therefore ordered, adjudged and decreed:

1. That before February 13, 1966, the defendant was not covered under 29 U.S.C.A. § 203(s).

2. That the defendant is and at all pertinent times has been a "retail or service establishment."

3. That the defendant was before February 1, 1967, exempt from the Act under the exception in § 213(a) (2) (i) of the Act.

4. That the request for injunction is denied and the action is dismissed.